**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DREAMWEAVER LURE CO. INC.,
a Michigan corporation,

      Plaintiff,                       Case No.:

           v.                            Hon.

KMDA, Inc., a Minnesota corporation,
Salmon Candy Tackle, LLC, a Wisconsin
limited liability company, Derek Vekich,
an individual, and Russell Gahagan, an
individual.

      Defendants.

_____

**PLAINTIFF'S COMPLAINT**

      Plaintiff Dreamweaver Lure Co. Inc., by and through its attorneys Revision Legal, PLLC,

states as follows for its Complaint:

**PARTIES, JURISDICTION AND VENUE**

      1.     Plaintiff Dreamweaver Lure Co. Inc. ("Dreamweaver") is a Michigan corporation.

      2.     Defendant KMDA, Inc. ("KMDA") is a Minnesota Corporation.

      3.     Upon information and belief, Defendant Derek Vekich is an individual residing in

the State of Minnesota.

      4.     Defendant Derek Vekich is the Chief Executive Officer of KMDA.

      5.     Defendant Salmon Candy Tackle, LLC ("Salmon Candy"), is a Wisconsin limited

liability company.

      6.     Defendant Russell Gahagan is an individual residing in the State of Wisconsin.

      7.     Defendant Russell Gahagan is the registered agent for and, upon and information

and belief, the sole member of Defendant Salmon Candy.

## JURISDICTION AND VENUE

8.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Copyright Act, 17 U.S.C. § 501, the Lanham Act, 15 U.S.C. § 1051, *et seq*., and 28 U.S.C. § 1331.

9.      Personal jurisdiction is proper over Defendants because exercise thereof would not offend traditional notions of fair play or substantial justice because Defendants have purposefully availed themselves of this forum state, the cause of action arises from Defendants' activities here, and the Defendants' actions have caused damage to Plaintiff, a Michigan corporation, in the State of Michigan.

10.      Specifically, Defendants purposefully and intentionally availed themselves of this forum state by importing, distributing, offering for sale, displaying, advertising, and selling infringing goods substantially similar to Plaintiff's copyrighted works and confusingly similar to Plaintiff's trade dress in the State of Michigan, by creating and operating interactive an interactive website that reveals specifically intended interactions with residents of the State of Michigan, and, upon information and belief, by physically distributing infringing goods to brick-and-mortar retail stores in the State of Michigan.

11.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants where the Defendants directly target business activities toward consumers in the United States, including Michigan, through their fully interactive e-commerce store and by physically distributing infringing goods to brick-and-mortar retail stores in the State of Michigan. Defendants have targeted sales to Michigan residents by setting up and operating an e-commerce store that target United States consumers and by physically distributing infringing goods to brick-and-mortar retail stores in the State of

Michigan that sell those products to Michigan residents. They offer shipping to the United States, including Michigan, accept payment in U.S. dollars, offer categories of products specifically targeted to U.S. consumers, and, upon information and belief, have sold substantially similar goods to Plaintiff's federally registered copyrighted works to residents of Michigan and sold products that are confusingly similar to Plaintiff's trade dress to residents of the State of Michigan. The Defendants are committing tortious acts in Michigan, are engaging in interstate commerce, and have wrongfully caused Plaintiff, a Michigan corporation, substantial injury in the State of Michigan.

## FACTUAL BACKGROUND

### *Plaintiff, its Trade Dress, and its Copyrights*

12.     Plaintiff is a manufacturer and retailer of various fishing gear.

13.     Plaintiff specializes in manufacturing fishing lures for deep water fishing.

14.     Among its many other products, Plaintiff offers a specialized fishing lure branded as the Spindoctor.

15.     Plaintiff designed the Spindoctor lure, manufactures the Spindoctor lure, and sells the Spindoctor lure at various brick-and-mortar retailers across the country as well as online, both at its website, <www.dreamweaverlures.com> and on third-party, online platforms, such as Cabelas.com.

16.     Plaintiff's Spindoctor lure has a unique shape and features unique colors and patterns, all designed by Plaintiff. Images of the topside and underside of one of Plaintiff's Spindoctor lures are embedded below:

3

*Topside of Spindoctor*



*Underside of Spindoctor*



17.    The shape of the Spindoctor lure and the color patterns featured on various Spindoctor Lures are distinctive and non-functional.

18.    The plastic tabs on the underside of the Spindoctor lure—two diagonal tabs near the rear end and one horizontal tab on the nose—allow the lure to spin steadily in the water, but the overall shape of the Spindoctor and the color pattern serve no functional purpose.

19.    Plaintiff has been manufacturing and selling Spindoctors since 2003.

20.    In 2011, Plaintiff designed the specific Spindoctor shown above, which uses a fishbone pattern on the topside and a sparkly pattern on the underside.

21.    The fishbone patterned Spindoctors are some of Plaintiff's best sellers and have been since their release in 2011.

22.    Plaintiff's Spindoctor lures are well-recognized in the fishing community.

4

23.     Fishermen recognize the Spindoctor's unique shape and associate that shape with Plaintiff.

24.     Given its size and shape, fisherman can recognize a Spindoctor from another boat many meters away.

25.     The Spindoctor lure has acquired distinctiveness in the marketplace where consumers recognize its shape and understand that Plaintiff is the sole source of the Spindoctor.

26.     No other lure manufacturer lawfully sells lures shaped like Plaintiff's Spindoctor.

27.     Plaintiff has sold over 800,000 Spindoctors since 2003 and has spent well over $250,000 marketing the Spindoctor since 2003.

28.     Given Plaintiff's long use of the Spindoctor shape, its marketing investment into the Spindoctor, and where the relevant purchasing public associates the Spindoctor's shape with Plaintiff, Plaintiff has common law trade dress rights in the Spindoctor shape.

29.     Plaintiff also has copyrights in the design of the Spindoctor.

30.     Plaintiff owns a federal copyright registration for the Spindoctor pictured in Paragraph 13 above, Registration Number VA 2-423-380 ("Copyrighted Spindoctor Design").

31.     Plaintiff first published its Copyrighted Spindoctor Design on or about March 2, 2011.

*32.*     Plaintiff's copyrights in its Copyrighted Spindoctor Design extend to its shape and its coloration independently, as well as to the product design as a collective whole.

### Defendants' Infringement

33.     Salmon Candy manufactures and sells fishing gears, including lures.

34.    Upon information and belief, Defendant KMDA is the sole owner of Salmon Candy, has a controlling interest in Salmon Candy, or exercises control of and shares profits with Salmon Candy through a corporate partnership of some kind.

35.    KMDA serves as the distributor for Salmon Candy products, including the Infringing Lures.

36.    Defendant Russell Gahagan is, or was, the sole member of Salmon Candy and, upon information and belief, presently serves as a director of Salmon Candy.

37.    Defendant Salmon Candy and Defendant KMDA are related entities.

38.    Salmon Candy's website lists its address as the same PO Box listed in KMDA's corporate registration with the State of Minnesota: PO Box 509 Bovey, MN 55709.

39.    Defendant Russell Gahagan is, or was, an employee of KMDA.

40.    In a bankruptcy filing from 2022, Defendant Russell Gahagan listed his then-current employer as KMDA and his position as a "salesman."

41.    Defendants own and operate the ecommerce website located at <salmoncandyfishing.com>, which operates under the Salmon Candy brand name and sells various fishing fear, including lures.

42.    Upon information and belief, Defendants distribute fishing gear to brick-and-mortar retail stores in the United States, including Michigan, for sales directly to consumers.

43.    Defendants manufacture, distribute, and offer for sale lures that are nearly identical to Plaintiff's Spindoctors ("Infringing Lures"). Pictures of Defendants' Infringing Lures are embedded below.



44.     The leftmost Infringing Lure in the above photo (titled the Green Jeans UV 8"
Spinnie) (referred to herein as "Green Jeans Spinnie") is nearly identical to Plaintiff's
Copyrighted Spindoctor Design.

45.     The Green Jeans Spinnie has an identical shape to Plaintiff's Copyrighted
Spindoctor Design. It also has a shimmery fishbone pattern running longways down the center of
its topside and blue and green coloration around the fishbone pattern just like Plaintiff's
Copyrighted Spindoctor Design.

46.     Defendants' Green Jeans Spinnie is strikingly similar to Plaintiff's Copyrighted
Spindoctor Design.

47.     Defendants' Green Jeans Spinnie is substantially similar to Plaintiff's
Copyrighted Spindoctor Design.

48.     Defendants' prominently display the Green Jeans Spinnie and other Infringing
Lures that are substantially similar to Plaintiff's Copyrighted Spindoctor Design on their website.

49.     Plaintiff has not licensed its copyrights in the Copyrighted Spindoctor Design to
Defendants.

50.     Defendants do not have Plaintiff's permission or authorization to create
substantially similar or derivative designs of Plaintiff's Copyrighted Spindoctor Design.

51.     Upon information and belief, Defendants knew of, were aware of, and intentionally copied Plaintiff's Copyrighted Spindoctor Design to create the Green Jeans Spinnie.

52.     Upon information and belief, Defendant Derek Vekich was personally involved with the creation of the Green Jeans Spinnie, personally authorized the reproduction, distribution, and public display of the Green Jeans Spinnie, and directly and materially benefits from same.

53.     Upon information and belief, Defendant Russell Gahagan was personally involved with the creation of the Green Jeans Spinnie, personally authorized the reproduction, distribution, and public display of the Green Jeans Spinnie, and directly and materially benefits from same.

54.     Defendants reproduced, distributed, publicly displayed on their website and in various marketing materials, and created derivative works of Plaintiff's Copyrighted Spindoctor Design.

55.     Defendants manufacture and offer for sale Infringing Lures that are nearly identical to Plaintiff's Spindoctors.

56.     Defendants' Infringing Lures use Plaintiff's protected trade dress to intentionally confuse consumers into thinking Defendants products are produced or endorsed by Plaintiff.

57.     Specifically, Defendants' Infringing Lures feature the exact same shape as Plaintiff's Spindoctors.

58.     Defendants' Infringing Lures are confusingly similar to Plaintiff's Spindoctors.

59.     Upon information and belief, Defendant Derek Vekich was personally involved with the creation and designing of the Infringing Lures, personally authorized the production, distribution, and sale of the Infringing Lures, and directly and materially benefits from same.

60.     Upon information and belief, Defendant Russell Gahagan was personally involved with the creation and designing of the Infringing Lures, personally authorized the production, distribution, and sale of the Infringing Lures, and directly and materially benefits from same.

61.     Upon information and belief, Defendants market the Infringing Lures, including the Green Jeans Spinnie, using targeted advertising to users located in Michigan.

62.     Defendants thus use an infringement of Plaintiff's Copyrighted Spindoctor Design, which also infringes Plaintiff's trade dress, to drive traffic to its website where visitors will see, and are likely to consider buying, Defendants' Infringing Lures or Defendants' other offerings.

63.     On February 11, 2023, Plaintiff sent a cease-and-desist letter to Defendants demanding they stop infringing Plaintiff's trade dress.

64.     Defendants acknowledged they received Plaintiff's February 11, 2023 letter.

65.     Defendants continued to publicly display, offer for sale, and sell the Infringing Lures after receiving Plaintiff's letter and continue to do so to this day.

66.     Upon information and belief, Defendants Derek Vekich and Russell Gahagan made the decision to ignore Plaintiff's cease-and-desist letter and personally authorized Defendants to further publicly display, offer for sale, and sell the Infringing Lures.

### *Injury to Plaintiff and Consumers*

67.     Defendants' actions described above have damaged and irreparably harmed Plaintiff.

68.     Consumers are highly likely to be confused due to Defendants' use of Plaintiff's trade dress and copyrighted design.

69.     If allowed to continue marketing and selling its Infringing Lures, Defendants will further damage and injure Plaintiff's reputation and the goodwill associated with the Plaintiff's trade dress, which is well-known to the relevant consumers as source identifiers for high-quality and effective products.

70.     If allowed to continue marketing and selling its Infringing Lures, Defendants will continue to create significant likelihood of consumer confusion that will irreparably harm the public and its interest in being free from confusion.

71.     Plaintiff has no adequate remedy at law.

72.     Defendants knew or should have known that its activities described above constitute trade dress infringement, unfair competition, and copyright infringement.

73.     Defendants acted knowingly and willfully in reckless disregard of Plaintiffs' rights.

**COUNT I**
**Trade Dress Infringement**
**Michigan Common Law**
***All Defendants***

74.     Plaintiff restates all prior paragraphs as if fully restated herein.

75.     Plaintiff owns trade dress rights in its Spindoctor lures under the common law.

76.     Plaintiff's trade dress in its Spindoctors has acquired distinctiveness and secondary meaning in the marketplace and serves as a source indicator for Plaintiff.

77.     Plaintiff's trade dress in its Spindoctors is nonfunctional.

78.     Plaintiff uses its trade dress in commerce, specifically in connection with the sale of its Spindoctor lures.

79.     Defendants have made a false or misleading representation of fact by manufacturing, marketing, and selling in commerce its Infringing Lures, which use a shape that is confusingly similar to Plaintiff's trade dress indicating a false designation of origin and suggesting

to consumers that the products offered on Defendants' websites are either a legitimate source of Plaintiff's goods, are sponsored by Plaintiff, or that Defendants are associated or affiliated with Plaintiff in some way.

80.     Defendants' actions as described above are likely to cause confusion among consumers, who are likely to believe that Defendants' Infringing Lures either originated with Plaintiff, are sponsored by Plaintiff, or that Defendants are associated or affiliated with Plaintiff in some way.

81.     Defendants' actions as described above have at all relevant times to this action, been willful and intended to deceive consumers as to the source and authenticity of goods offered by Defendants.

82.     Plaintiff has no adequate remedy at law and will continue to suffer irreparable harm to its reputation and goodwill if Defendants' actions are not enjoined.

83.     As a foreseeable, direct, and proximate cause of Defendants' above-described actions, Plaintiff and consumers have been and will continue to be irreparably damaged.

## <u>COUNT II</u>
### False Designation of Origin as to Plaintiff's Common Law Trade Dress
### 15 U.S.C. § 1125
*All Defendants*

84.     Plaintiff restates all prior paragraphs as if fully restated herein.

85.     Plaintiff owns trade dress rights in its Spindoctor lures under the common law.

86.     Plaintiff's trade dress in its Spindoctors has acquired distinctiveness and secondary meaning in the marketplace and serves as a source indicator for Plaintiff.

87.     Plaintiff's trade dress in its Spindoctors is nonfunctional.

88.     Plaintiff uses its trade dress in commerce, specifically in connection with the sale of its Spindoctor lures.

89.    Defendants have made a false or misleading representation of fact by manufacturing, marketing, and selling in commerce its Infringing Lures, which use a shape that is confusingly similar to Plaintiff's trade dress indicating a false designation of origin and suggesting to consumers that the products offered on Defendants' websites are either a legitimate source of Plaintiff's goods, are sponsored by Plaintiff, or that Defendants are associated or affiliated with Plaintiff in some way.

90.    Defendants' actions as described above are likely to cause confusion among consumers, who are likely to believe that Defendants' Infringing Lures either originated with Plaintiff, are sponsored by Plaintiff, or that Defendants are associated or affiliated with Plaintiff in some way.

91.    Defendants' actions as described above have at all relevant times to this action, been willful and intended to deceive consumers as to the source and authenticity of goods offered by Defendants.

92.    Plaintiff has no adequate remedy at law and will continue to suffer irreparable harm to its reputation and goodwill if Defendants' actions are not enjoined.

93.    As a foreseeable, direct, and proximate cause of Defendants' above-described actions, Plaintiff and consumers have been and will continue to be irreparably damaged.

## COUNT III
### Secondary Trade Dress Infringement
*Defendant KMDA and Derek Vekich*

94.    Plaintiff restates all prior paragraphs as if fully restated herein.

95.    Plaintiff owns trade dress rights in its Spindoctor lures under the common law.

96.    Plaintiff's trade dress in its Spindoctors has acquired distinctiveness and secondary meaning in the marketplace and serves as a source indicator for Plaintiff.

97.     Plaintiff's trade dress in its Spindoctors is nonfunctional.

98.     Plaintiff uses its trade dress in commerce, specifically in connection with the sale of its Spindoctor lures.

99.     Defendants Salmon Candy and Russell Gahagan have made a false or misleading representation of fact by manufacturing, marketing, and selling in commerce the Infringing Lures, which use a shape that is confusingly similar to Plaintiff's trade dress indicating a false designation of origin and suggesting to consumers that the products offered on Salom Candy's website is either a legitimate source of Plaintiff's goods, are sponsored by Plaintiff, or that Salmon Candy is associated or affiliated with Plaintiff in some way.

100.    Defendants Salmon Candy and Russell Gahagan's actions as described above are likely to cause confusion among consumers, who are likely to believe that Salmon Candy's Infringing Lures either originated with Plaintiff, are sponsored by Plaintiff, or that Salmon Candy is associated or affiliated with Plaintiff in some way.

101.    Defendants KMDA and Derek Vekich distribute the Infringing Lures for Salmon Candy.

102.    Tags affixed to the Infringing Lures identify Defendant KMDA as the distributor of the Infringing Lures.

103.    Defendants KMDA and Derek Vekich intentionally induced Defendants Salmon Candy and Russell Gahagan to infringe Plaintiff's protected trade dress by offering to distribute the Infringing Lures and then distributing those lures.

104.    Defendants KMDA and Derek Vekich have actual knowledge of Plaintiff's trade dress rights in its Spindoctors and know that the Infringing Lures infringe on those rights, yet Defendants KMDA and Derek Vekich continue to supply Salmon Candy with distribution services

and continue to distribute the Infringe Lures despite knowledge of Salmon Candy and Russell Gahagan's infringement.

105.    Defendants KMDA and Derek Vekich financially benefit from its distribution arrangement with Defendants Salmon Candy and Russell Gahagan.

106.    Plaintiff has no adequate remedy at law and will continue to suffer irreparable harm to its reputation and goodwill if Defendants' actions are not enjoined.

107.    As a foreseeable, direct, and proximate cause of Defendants' above-described actions, Plaintiff and consumers have been and will continue to be irreparably damaged.

**COUNT IV**
**Copyright Infringement**
**17 U.S.C. § 501(a)**
*All Defendants*

108.    Plaintiff incorporates the above paragraphs as if fully restated herein.

109.    Plaintiff owns a federal copyright registration for the Copyrighted Spindoctor Design, Registration Number VA 2-423-380.

110.    The Copyrighted Spindoctor Design is an original work of authorship, authored by Plaintiff, and fixed in a tangible medium of expression.

111.    Defendants had access to Plaintiff's Copyrighted Spindoctor Design.

112.    Defendants' Green Jeans Spinnie is strikingly similar to Plaintiff's Copyrighted Spindoctor Design.

113.    Defendants' Infringing Lures are strikingly similar to Plaintiff's Copyrighted Spindoctor Design.

114.    Defendants have reproduced, prepared derivative works of, distributed copies of, and displayed publicly their Infringing Lures, including the Green Jean Spinnie, which are substantially similar to Plaintiff's Copyrighted Spindoctor Design.

115.    Specifically, Defendant KMDA has reproduced, prepared derivative works of, distributed copies of, and displayed publicly their Infringing Lures, including the Green Jean Spinnie, which use substantial portions of protected expression found in Plaintiff's Copyrighted Spindoctor Design.

116.    Defendant KMDA acted with volition when it reproduced, prepared derivative works of, distributed copies of, and displayed publicly the Infringing Lures, including the Green Jean Spinnie.

117.    Specifically, Defendant Derek Vekich has reproduced, prepared derivative works of, distributed copies of, and displayed publicly the Infringing Lures, including the Green Jean Spinnie, which are substantially similar to Plaintiff's Copyrighted Spindoctor Design.

118.    Specifically, Defendant Russell Gahagan has reproduced, prepared derivative works of, distributed copies of, and displayed publicly the Infringing Lures, including the Green Jean Spinnie, which are substantially similar to Plaintiff's Copyrighted Spindoctor Design.

119.    Defendant Derek Vekich acted with volition when he reproduced, prepared derivative works of, distributed copies of, and displayed publicly the Infringing Lures, including the Green Jean Spinnie, and when he authorized the reproduction, distribution, public display of the Infringing Lures, including the Green Jean Spinnie, and the creation of unauthorized derivative works based on Plaintiff's Copyrighted Spindoctor Design.

120.    Defendant Russell Gahagan acted with volition when he reproduced, prepared derivative works of, distributed copies of, and displayed publicly the Infringing Lures, including the Green Jean Spinnie, and when he authorized the reproduction, distribution, public display of the Infringing Lures, including the Green Jean Spinnie, and the creation of unauthorized derivative works based on Plaintiff's Copyrighted Spindoctor Design.

121.    Defendants unauthorized copying of substantial portions of Plaintiff's Copyrighted Spindoctor Design violates Plaintiff's exclusive right of reproduction granted in 17 U.S.C. § 106(1).

122.    Defendants unauthorized distribution of the Infringing Lures, including the Green Jean Spinnie, violates Plaintiff's exclusive right of distribution granted in 17 U.S.C. § 106(3).

123.    Defendants' public display of the Infringing Lures, including the Green Jean Spinnie, violates Plaintiff's exclusive right of public display granted in 17 U.S.C. § 106(4).

124.    Defendants unauthorized copying of substantial portions of Plaintiff's Copyrighted Spindoctor Design and creation of new works substantially similar to Plaintiff's Copyrighted Spindoctor Design violates Plaintiff's exclusive right to create derivative works granted in 17 U.S.C. § 106(2).

125.    Defendants' infringement of Plaintiff's Copyrighted Spindoctor Design was deliberate and willful.

126.    As a result of Defendants' infringement, Plaintiff has suffered monetary damages.

127.    As the CEO of Defendant KMDA, Defendant Derek Vekich directs, controls, ratifies, participates in, or is the moving force behind the Defendants' infringement and is thus personally liable for such infringement.

128.    As the CEO of Defendant KMDA, Defendant Derek Vekich supervises Defendant KMDA's infringing activity and has a financial interest in that activity and is thus personally liable for such infringement.

129.    As the CEO of Defendant KMDA, Defendant Derek Vekich personally participates in Defendant KMDA's infringement and is thus personally liable for such infringement.

130.    As the sole member of Defendant Salmon Candy, Defendant Russell Gahagan directs, controls, ratifies, participates in, or is the moving force behind the Defendants' infringement and is thus personally liable for such infringement.

131.    As the sole member of Defendant Salmon Candy, Defendant Russell Gahagan supervises Defendant Salmon Candy's infringing activity and has a financial interest in that activity and is thus personally liable for such infringement.

132.    As the sole member of Defendant Salmon Candy, Defendant Russell Gahagan personally participates in Defendant Salmon Candy's infringement and is thus personally liable for such infringement.

133.    Plaintiff is entailed to the recovery of, at its election, statutory damages, actual damages, Defendants' profits, and the costs of this action.

134.    Plaintiff is also entitled to preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502 and 17 U.S.C § 106.

135.    Plaintiff is entitled to its attorneys' fees pursuant to 17 U.S.C. § 505 and 17 U.S.C § 106.

### COUNT V
**Secondary Copyright Infringement – Vicarious Liability**
*Defendant KMDA and Derek Vekich*

136.    Plaintiff incorporates the above paragraphs as if fully restated herein.

137.    Plaintiff owns a federal copyright registration for the Copyrighted Spindoctor Design, Registration Number VA 2-423-380.

138.    The Copyrighted Spindoctor Design is an original work of authorship, authored by Plaintiff, and fixed in a tangible medium of expression.

139.    Defendants had access to Plaintiff's Copyrighted Spindoctor Design.

140.    Defendants' Green Jeans Spinnie is strikingly similar to Plaintiff's Copyrighted Spindoctor Design.

141.    Defendants' Infringing Lures are strikingly similar to Plaintiff's Copyrighted Spindoctor Design.

142.    Defendants have reproduced, prepared derivative works of, distributed copies of, and displayed publicly their Infringing Lures, including the Green Jean Spinnie, which are substantially similar to Plaintiff's Copyrighted Spindoctor Design.

143.    Defendants have directly infringed Plaintiff's Copyrighted Spindoctor Design.

144.    Defendant KMDA owns Defendant Salmon Candy or has a controlling interest in Defendant Salmon Candy.

145.    Through its ownership of, or controlling interest in, Salmon Candy, Defendant KMDA has the power to monitor and regulate the reproduction, preparation of derivative works of, distribution of copies of, and the public display of the Infringing Lures, including the Green Jean Spinnie, which are substantially similar to Plaintiff's Copyrighted Spindoctor Design.

146.    Through its ownership of, or controlling interest in, Salmon Candy, Defendant KMDA directly profits off the reproduction, preparation of derivative works of, distribution of copies of, and the public display of the Infringing Lures, including the Green Jean Spinnie, which are substantially similar to Plaintiff's Copyrighted Spindoctor Design.

147.    Through its position as a distributor for Salmon Candy, Defendant KMDA has the power to monitor and regulate the reproduction, preparation of derivative works of, distribution of copies of, and the public display of the Infringing Lures, including the Green Jean Spinnie, which are substantially similar to Plaintiff's Copyrighted Spindoctor Design.

148.    Through its position as a distributor for Salmon Candy, Defendant KMDA directly profits off the reproduction, preparation of derivative works of, distribution of copies of, and the public display of the Infringing Lures, including the Green Jean Spinnie, which are substantially similar to Plaintiff's Copyrighted Spindoctor Design.

149.    Despite its ability to control Salmon Candy's infringement of Plaintiff's Copyrighted Spindoctor Design, and despite receiving express notice from Plaintiff regarding Salmon Candy's infringement, Defendant KMDA has not stopped or limited Salmon Candy from continuing to infringe, and it continues to directly benefit from profits earned by Salmon Candy's infringement.

150.    As the CEO of Defendant KMDA, Defendant Derek Vekich directs, controls, ratifies, participates in, or is the moving force behind the Defendant KMDA's secondary infringement of Plaintiff's copyrights and is thus personally liable for such infringement.

151.    As the CEO of Defendant KMDA, Defendant Derek Vekich supervises Defendant KMDA's secondarily infringing activity and has a financial interest in that activity and is thus personally liable for such infringement.

152.    As the CEO of Defendant KMDA, Defendant Derek Vekich personally participates in Defendant KMDA's secondary infringement and is thus personally liable for such infringement.

153.    As a result of Defendants KMDA's vicarious infringement, Plaintiff has suffered monetary damages.

154.    Plaintiff is entailed to the recovery of, at its election, statutory damages, actual damages, Defendant KMDA's profits, and the costs of this action.

155.    Plaintiff is also entitled to preliminary and permanent injunctive relief pursuant to 17 U.S.C. § 502 and 17 U.S.C § 106.

156.    Plaintiff is entitled to its attorneys' fees pursuant to 17 U.S.C. § 505 and 17 U.S.C § 106.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant the following relief:

1. That the Court enjoin and restrain Defendants, as well as their heirs, successors, assigns, officers, agents, and employees from:

   a. Reproducing, distributing copies of, and displaying publicly Defendants' Infringing Lures;

   b. Reproducing, preparing derivative works of, distributing copies of, and displaying publicly designs substantially similar to Plaintiff Copyrighted Spindoctor Design;

   c. Manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products incorporating Plaintiff's trade dress or any confusingly similar trade dress;

   d. Committing any acts reasonably calculated to cause consumers to believe that Defendants' Infringing Lures are those sold under the authorization, control, and/or supervision of Plaintiff or sponsored by, approved by, or otherwise connected to Plaintiff;

   e. Further infringing Plaintiff's trade dress and causing further damage to Plaintiff's goodwill; and

   f. Aiding or assisting any other third party in subsections (a) and (e) above;

2. That the Court award Plaintiff, at its election, its actual damages, lost profits, consequential damages, exemplary damages, statutory damages, and any other damages allowable under law, including an equitable accounting;

3. That the Court award Plaintiff its costs and attorneys' fees; and,

4. That the Court award Plaintiff any other relief to which it is entitled.

Respectfully submitted,

Date: December 23, 2024

/s/ *Eric Misterovich*
Eric Misterovich (P73422)
John Di Giacomo (P73056)
Andrew Jurgensen (P81123)
Revision Legal, PLLC
8051 Moorsbridge Rd.
Portage, MI 49024
eric@revisionlegal.com
john@revisionlegal.com
drew@revisionlegal.com

*Attorneys for Plaintiff*

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury for all eligible counts contained within this Complaint.

Respectfully submitted,

Date: December 23, 2024

/s/ *Eric Misterovich*
Eric Misterovich (P73422)
John Di Giacomo (P73056)
Andrew Jurgensen (P81123)
Revision Legal, PLLC
8051 Moorsbridge Rd.
Portage, MI 49024
eric@revisionlegal.com
john@revisionlegal.com
drew@revisionlegal.com

*Attorneys for Plaintiff*